UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Eric G.,[1]

                                                Plaintiff,         Case # 19-cv-1328-FPG

v.                                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                              Defendant.
_____

## INTRODUCTION

On February 25, 2014, Eric G. protectively applied for Supplemental Security Income under Title XVI of the Act. Tr.[2] 129, 295-300. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge Julia D. Gibbs on June 16, 2016. Tr. 92-128, 164-69. At the hearing, Plaintiff and vocational expert Jacquelyn D. Schabacker testified. Tr. 95-127. On February 25, 2014, the ALJ issued an unfavorable decision. Tr. 143-58. The Appeals Council issued a Remand Order on October 18, 2017. Tr. 159-63.

Plaintiff appeared at a second hearing before Administrative Law Judge Stephen Cordovani (the "ALJ") on November 13, 2018. Tr. 40-90. At the hearing, Plaintiff, vocational expert Dawn Blythe (the "VE"), and Plaintiff's mother testified. Tr. 45-89. On December 20, 2018, the ALJ issued an unfavorable decision. Tr. 7-34. The Appeals Council denied Plaintiff's request for review on August 2, 2019, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 9.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 16, 19. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

**LEGAL STANDARD**

### I.  District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.  Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her

past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 25, 2014, the alleged onset date. Tr. 13. At step two, the ALJ found that Plaintiff has the following severe impairments: "obesity, migraine headaches, insomnia, obstructive sleep apnea, torn right shoulder rotator cuff, depression and anxiety." Tr. 13. At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 13.

The ALJ determined that Plaintiff maintains the RFC to perform light work with additional limitations. As relevant here, the ALJ found that Plaintiff can understand, remember and carry out simple instructions and tasks; cannot perform any supervisory duties; cannot perform independent decision-making; cannot meet strict production quotas or production rate pace; can tolerate only minimal changes in routine and processes; can have only occasional interaction with supervisors and co-workers, and only incidental interaction with the general public; and would be off task less than 10% of the work day. Tr 16.

At steps four and five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform including, for example, "housekeeping cleaner," and "photo copy machine operator." Tr. 28. As such, the ALJ found that Plaintiff was not disabled.

**II.     Analysis**

Plaintiff argues that the ALJ (1) failed to properly consider Medical Listing 12.04 for Depressive Bipolar, and Related Disorders; and (2) crafted an RFC finding that was not based on substantial evidence with regard to off-task limitations. ECF No. 16-1 at 18-28. Because this Court agrees that remand is required under Plaintiff's first argument, it does not address Plaintiff's other arguments.

"When an ALJ finds that a claimant has a medically determinable impairment that is 'severe,' the ALJ must determine whether the identified 'impairment(s) meets or equals a listed impairment in appendix 1.'" *Cusumano v. Saul*, No. 2020 WL 6873437, at *4, 2020 WL 6873437, at *4 (E.D.N.Y. Nov. 23, 2020) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). "Each impairment in appendix 1 'is sufficient, at step three, to create an irrebuttable presumption of disability' under the Social Security regulations." *Id.* (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998)) (additional citation omitted).

It is Plaintiff's burden at step three to demonstrate that his impairments meet or equal a listed impairment. *Beers v. Commissioner*, 449 F. Supp. 3d 96, 100 (W.D.N.Y. 2020). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Id.* (quoting *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017)) (internal quotation marks omitted). Where a claimant's impairment meets only some of the criteria, "no matter how severely," he does not qualify. *Id.* (citation omitted).

"Where the claimant's symptoms as described by the medical evidence appear to match those described in the Listings," the ALJ must explain why the claimant did not meet or equal the Listings. *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation omitted). "[I]t

4

is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review, and [t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Beers*, 449 F. Supp. 3d at 100 (citation and internal quotation marks omitted) (alterations in original). "Nevertheless, an ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." *Yeomas v. Colvin*, No. 13-CV-6276P, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (citation, quotation marks, and alterations omitted).

"Listing 12.04 covers depressive, bipolar and related disorders." *Cusumano*, 2020 WL 6873437, at *4 n.3 (citing 20 C.F.R. § 404, Subpt. P, App'x 1). To meet this listing, "a claimant's conditions must satisfy the criteria in paragraph A and either paragraph B or C of the listing." *Id*. "Under paragraph A, a finding of depressive disorder requires medical documentation of five or more of the following: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide." *Id*. "Under paragraph B, there must be '[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning:' understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id*. "For paragraph C, there must be 'a medically documented history of the existence of the disorder over a period of at least 2 years,' as well as evidence of both 'medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and

5

signs of your mental disorder' and 'minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.'" *Id.*

In his decision, the ALJ discussed each of the paragraph B criteria, citing evidence in the record and/or hearing testimony supporting each consideration. Tr. 14-15. First, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information. Tr. 14. This area of mental functioning refers to plaintiff's ability to learn, recall, and use information to perform work activities. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00(E)(1). The ALJ noted that Plaintiff informed Dr. Janine Ippolito at a November 17, 2017 consultative examination that: "he does not manage any money and his mother is responsible for paying his bills" and that "[h]e does drive." Tr. 14. The ALJ also noted with respect to Dr. Ippolito's examination that she found Plaintiff's "thought process [to be] coherent." Tr. 14. In further support of his finding, the ALJ noted that "the assessment of Dr. Santa Maria found no basis for any cognitive impairment," and that, "[g]iven the record as a whole, [Plaintiff] has no greater than a moderate limitation in this area." Tr. 14.

Next, the ALJ discussed Plaintiff's ability to interact with others. This area of mental functioning refers to the plaintiff's ability to relate and work with supervisors, co-workers, and the public. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00 (E)(2). The ALJ noted the following evidence in support of his conclusion that Plaintiff has a moderate limitation in this area:

> As to social issues, the [Plaintiff] goes a couple of times a week to the corner deli for food (testimony). He sees his mom every day and sometimes while she is working at her house (cutting hair) and will interact with her customers. He interacts with stepbrothers. [Plaintiff] has no greater than a moderate limitation in this area.

Tr. 14.

With regards to concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff has a moderate limitation. Tr. 15. This area of mental functioning refers to the plaintiff's ability to focus attention on work activities and stay on task at a sustained rate. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00(E)(3). In support of this finding, the ALJ noted that Plaintiff "told Dr. Ippolito that he was fired from his last job due to problems." Tr. 15. Further, the ALJ noted that Plaintiff's attention and concentration impairments were "due to suspected difficulty with math skills." Tr. 15. Finally, the ALJ noted that Plaintiff's "recent and remote memory skills were impaired due to problems with memory and concentration." Tr. 15.

Next, the ALJ examined Plaintiff's ability to manage himself, finding a moderate limitation. This area of mental functioning refers to plaintiff's ability to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00(E)(4). "Examples include responding to demands; adapting to changes; managing psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." *Gabriel C. v. Commissioner*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *6 (N.D.N.Y. Sept. 18, 2019) (citing 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00(E)(4)). In support of this finding, the ALJ noted that "[i]n November 2017, the [Plaintiff] told Dr. Ippolito that he is able to shower and dress himself independently. His hobbies include watching TV. He spends a typical day watching TV, preparing and eating light meals. He lives alone." Tr. 15.

Plaintiff argues that the ALJ "failed to properly consider *at step three* the opinion of the Commissioner's expert and consulting psychologist Dr. Ippolito." ECF No. 16-1 at 20 (emphasis

in original). More specifically, Plaintiff points to Dr. Ippolito's findings that Plaintiff has "marked" limitations in "regulating emotions, controlling behavior, and maintaining well-being." ECF No. 16-1 at 20. Plaintiff argues that "[m]arked limitations in 'controlling behavior' would satisfy marked limitations in interacting with others under 12.04(B)(2) and marked limitations in . . . 'regulating emotions, controlling behavior, and maintaining well-being' would satisfy marked limitations in adapting or managing oneself under 12.04(B)(4)." *Id.* at 21.

In response, the Commissioner argues that the limitations described by Dr. Ippolito are "not . . . identical to the Paragraph B criteria of 'interacting with others' and 'adapting or managing oneself,' as the language in Dr. Ippolito's report obviously differs from that used in the regulations to describe those broad areas of mental functioning." ECF No. 19-1 at 21. The Court agrees. Plaintiff must satisfy all of the Paragraph B criteria, *see Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), and, while Dr. Ippolito's findings may suggest Plaintiff meets the criteria, the findings in and of themselves do not establish Plaintiff has satisfied the criteria *per se*.

Next, Plaintiff notes that the ALJ afforded "great weight" to Dr. Ippolito's opinion in his RFC determination but "[n]onetheless inexplicably found at step three that [Plaintiff] has a moderate limitation in interacting or managing oneself." ECF No. 16-1 at 21. Similarly, Plaintiff notes that "[w]ith regard to the area of interacting with others, although the ALJ again found moderate limitation (despite Dr. Ippolito's opinion of marked limitations in controlling behavior), the ALJ's RFC finding actually supports marked limitation in social functioning." *Id.* at 22. In response to these arguments, the Commissioner notes, citing *Jay v. Comm'r of Soc. Sec.*, No. 17-CV-59S, 2018 WL 3688315 (W.D.N.Y. Aug. 3, 201), that "[i]t is well established that a Step 3 determination is not an RFC assessment, but instead is used to rate the severity of mental impairment . . . and [a] determination made at Step 3 therefore need not carry over verbatim to

the ultimate RFC determination because the two determinations require distinct analysis." ECF No. 18-1 (citing *Jay*, 2018 WL 3688315, at *3).

While the Court agrees with the Commissioner that the step 3 and RFC determinations require distinct analyses, where an inconsistency between the ALJ's step 3 and RFC determinations "leaves the Court unable to discern the ALJ's reasoning or reconcile inconsistent findings, . . . the Commissioner's decision must be reversed and remanded for reconsideration." *Jay*, 2018 WL 3688315, at *4. Here, the Court is unable to discern why the ALJ did not discuss or consider at step 3 Dr. Ippolito's findings that Plaintiff has "marked" limitations in "regulating emotions, controlling behavior, and maintaining well-being," while specifically affording great weight to Dr. Ippolito's opinion in his RFC determination because "it was based on a detailed examination, program knowledge and is generally consistent with the overall record." *See* Tr. 14-15, 26. The Court is persuaded by the reasoning in *Jay*:

> Here, the ALJ found more severe limitations in the RFC than listed in her Step 3 finding without explanation. This inconsistency calls into question the ALJ's Step 3 and RFC determinations, and leaves this Court unable to discern the ALJ's reasoning or reconcile her inconsistent findings. This is a salient issue because Plaintiff maintains that he otherwise meets the 12.04 Listing.

*Jay*, 2018 WL 3688315, at *4.  Accordingly, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 16, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 19, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 16, 2021
       Rochester, New York

                                                 HON. FRANK P. GERACI, JR.
                                                 Chief Judge
                                                 United States District Court